The starting point for our argument today is that Arbitrator Harris misinterpreted Article 26, Section 6 of the contract that refers to the term, the last day of mediation. And that his finding that the December 13, 2012 was the last day of mediation was not supported by substantial evidence. There was nothing in the collective bargaining agreement that precludes a grievance from being mediated at more than one mediation session. So I have a question related to that from a factual standpoint. Were the parties, did they agree at the end of the first mediation, which I think was in December of 2012, that there would be subsequent mediation? I do not know that the record reflects the answer to that question. The reason I ask is because if the rules require an arbitration to be filed within a certain number of days of the conclusion of the grievance procedure, which in this case was the mediation, isn't it important that we know when the mediation was believed to be ended by the parties? That is a very good question that I do not believe that the record answers. It does, in a sense, answer the question because the government listed the case as still pending. Right. I mean, I think the answer… Wait, where did the government list the case as still pending? In the joint appendix, we have reproduced the agenda for the 2015 mediation. No, no, no. This whole process and the way you all do this is baffling to me because it seems like… Well, first of all, it seems like the agency issues its decision on a grievance denying it and doesn't even wait for the employee to invoke arbitration and just shunts it off to mediation immediately. Yes. I don't understand why that happens at all. I mean, if the agency thinks its decision is right, why would it bother to invoke mediation? But this process of mediation seems to be you have this big list, you all get together, you go through some of them, and all you issue is a list saying here's the ones we've resolved. Yes. But it is silent as to what happens with the rest of them, isn't it? I think the record is silent with regard to the rest of them except that the fact that it was the agency who prepared the agenda for the… Yeah, yeah. No, there are different things. This case is, I think, procedurally a mess and complicated partly by the way you all do this stuff. But just looking at the 2012 one, at the end of the expiration of the 2012 session, there are a list of ones that are resolved. Yes. And then it doesn't say anything about the remaining ones, whether they're held over or whether they're finished as to mediation, right? I am guessing that there was nothing that… Where is this list that we've been talking about so we can look at it? Joint Appendix 309 has the list prepared by management of the grievances that they believe were open, that they prepared this list on March 17, 2015. This is the 2015 thing. Is there anything about the 2012 that would indicate after that? I don't think there's anything in the record in that regard. So how do we know that a mediation is rejected? We know which ones are granted. That's correct. Because it has the list after the mediation session of the union and the agency have agreed to resolve these. How do we know there's a final decision rejecting the mediation efforts, which would then trigger the 20-day requirement? I know of nothing in writing that memorialized that. But isn't that… Would it be good practice? Yes, it would be good practice to memorialize. Well, it would be really, really good practice considering that we have no idea because of the language of the bargaining agreement seems to suggest that if that stage doesn't result in any action, then the 20-day period kicks in to file something. And it seems like given the way this is operating that the failure to resolve something here in 2012 should have triggered that 20-day stage. And so you were untimely. And now we're arguing, though, because the agency has chosen to carry it over for whatever reason they've chosen, it suddenly may become timely again. Again, I don't want to be too critical because I know this is a labor process. It is not a court or administrative body like court type process. So there are definitely more informalities. But I can't conceive of any system where something would be final and then suddenly become not final again. I can only suggest that the fact that management considered to be an open issue in their mind that it was still a case to be discussed again. The question is, how do we know that they considered it to be an open issue? I think you're relying on this table that appears at 309. Help us to understand how this table works. This is prepared by management. It's open grievances is the list, right? Yes. And where is the particular arbitration we're talking about? It is... Or the particular grievance we're talking about. Number 70 on page 313. And just to note, Your Honor, and reflected in the brief somewhere, there's a record reference to the transcript where management testified that they indeed prepared this chart. Okay. So there it says, as of 2015, it's been denied. What does the record show about the status of this grievance in 2012 after the first session? The record is silent on that. There's nothing that's prepared after the 2012 mediation that lists in any way the status of unresolved grievances. I don't believe there is. There's nothing in the record to that effect. Despite the... So let me ask you hypothetically, if this 2015 mediation had never occurred... Yes. And you'd still filed for your arbitration, ask the agency to designate officers and things like this in the same time period you did here. Yes. You'd be out of time, wouldn't you? Because it would be more than well after the 20 days of the 20th. It would be past the deadline, but then the other... I know you have other arguments. Right. It's like, then what is the penalty for that? Right, right. And based upon a strict reading, you'd be out because it would be final and you hadn't gone in time. And so the arbitrator's decision in that sense is correct. So what we're looking at is whether somehow this relisting implicitly meant it wasn't final or somehow implicitly revived it. I think it explicitly says it wasn't final and it's listed as an open grievance. But it also says denied. Well, that's the initial grievance itself was denied. They would be denied to land up on this list. I see. Well, okay, but one other problem I have is the CBA expressly says that you can file for arbitration 20 days following the conclusion of the last stage in the grievance procedure. If you're telling us the grievance procedure didn't conclude after the mediation in December 2012, how did you comply with that? Because you claim the reason it didn't conclude is because it kept going all the way through 2015. And you know that because there was this second mediation discussion that occurred in March of 2015. But that's not when you filed for arbitration. You filed for arbitration when? Remind me of the date. The form was sent in 2014. Right. So the CBA doesn't say you can file for arbitration before a grievance procedure is concluded, does it? It doesn't say you can't. Yes, it does because it expressly says when you can file, which is 20 days following the conclusion of the last stage of the grievance procedure. So I think you're out of luck because you're either too late or too early. And I don't know what to do with that. Okay. The arbitrator did not rule that it was too early. And I would point out. And the government didn't argue that it was too early, right? I can't say that they didn't put that in their post-hearing brief in arbitration. I did not see that argued in the record. The arbitrator's decision is based solely on the notion that it was untimely as to the first mediation, which was closed. Yes. And therefore, you're out on that. And he said the second one can't revive it. If we disagree with him on that, that perhaps the agency's discretionary decision to revive the mediation somehow reopens the time period. He hasn't ruled on whether a premature arbitration request in advance of that mediation is untimely or not. Although it does seem like he's going to be bound by whatever that FLRA decision is to reject it also. Can I answer two questions that I didn't feel I fully answered Judge Moore's question? Invoking – sending the form early was a routine practice of the parties. At least there were 13 of the 61 grievances that were settled in 2015. Thirteen of them, the parties had submitted the FMCS form early. And that's a mutual – that is a mutual act. The form gets signed by the union, sent to management, management signs it, sends it to the FMCS. Is that what this table notes throughout that in this last column there are many, many sections where it says pending selection or things like that? Is that what you're talking about? Pending selection, yes. You've sent that request? Yes. I would also note that there were three other arbitration cases arbitrated about the same time where the form was submitted in 2014 and the matter was mediated again in 2015 and there was no objection to the timeliness. That was the Bullington case, the Carmona case, and the Bender case. And they're reproduced in the joint appendix. You can go. Okay. Or you can save time for rebuttal if you want. Yes, sure. Okay. If my time's up. I'm sorry. Thank you. May it please the Court? Wait. You've got to say it first. Go ahead. Go ahead. Thank you, Your Honor. May it please the Court? I'll first address Ms. Bufkin's argument regarding the 2012 arbitration. So under the plain language of the Master Labor Agreement, as Judge Moore noted earlier, the party has 20 days following the resolution of the mediation. Well, not necessarily. I mean, you can read that as a deadline that you have to submit it no later than that. It doesn't say that you can't submit it earlier. And, for example, the same problem arose under Federal Rule of Appellate Procedure, Rule 4. And even before it was amended to make this clear, most of the circuits had held that premature notice was sufficient, even though the language was even clearer there than it is here. So I'll point to a few points in the Master Labor Agreement that shows that this is a sequential process, that it goes mediation and then arbitration. Article 26, which refers to the mediation, says… What's the prejudice from having a premature notice? Well, Your Honor, we get into this weird procedural situation that was noted earlier where we have a mediation that one party, the agency, might think is finished, and then we have… But you clearly didn't think it was finished because you relisted it for 2015. Well, Your Honor, and I'll point the court to Appendix 21, which is the testimony regarding this list. This list was not an agenda, and it was not prepared by management. It was prepared by a paralegal as an organizational tool of all of the grievances in this section. So it wasn't an agenda that these are all of the things we're going to substantively discuss. But unless I'm missing something, you can't point to anything post-2012 that addressed whether this mediation was rejected and finally resolved. I'll point to a few things, Your Honor. First, the memorandum of agreement is the document that's culminated after every mediation that shows all of the grievances that are resolved. Does that memorandum say anywhere that grievances not listed are considered final? No, Your Honor. That's more of an implicit thing, but I'll point to something else. Well, that's not going to get you very far. There was testimony… The practices between you and the union on this are baffling and really lead to bizarre results. I mean, how is this person supposed to know whether her mediation was finished in 2012 and triggered the time for her to file the arbitration request? I know she's relying on the union, and maybe they should do a better job, but shouldn't she personally be aware of these timelines? Well, Your Honor, either her or, in this instance, her representative, the union manager, was there on her behalf, so certainly would know whether they reached a resolution or not. So we have testimony, which is on Appendix 21. But when you do reach a resolution, can't you have another mediation after that? Sure, Your Honor, and there's actually a procedure under the Master Labor Agreement that says parties can mutually agree to extend any timeline. So there could be a mutual agreement that says, we're not quite there, but we didn't have time at this mediation, so let's extend any deadlines and mediate it again. And if they've done that and done another mediation, would that have made the arbitration request timely? I mean, putting aside the premature thing, because I think that's another question. If she had filed after the 2015 mediation, would that have been timely? I think so, Your Honor, because there was testimony at the arbitration that her mediation was discussed again in 2015. And so if it was discussed, it was mediated, then she has 20 days following the final decision of that mediation, which would have been the memorandum of agreement. But the arbitrator didn't address that argument. It wasn't raised below, Your Honor. This sounds to me as they just admitted that the arbitrator was wrong in saying that the second mediation didn't trigger a 20-day period. Well, Your Honor, the arbitrator below said that there was no rights to another mediation. Okay, but correct. But I thought you just admitted to Judge Hughes that if they'd filed within 20 days after the second mediation, it would have been timely. Did I misunderstand? Well, I think, Your Honor, I was going from Judge Moore's question first that I was explaining that they could mutually agree that mediation is ongoing. Suppose we had the first mediation, and they had a second mediation, and she'd filed within 20 days after the second mediation. Would that have been timely? If the first mediation was not resolved, because if it's unresolved, then the timeline starts. And there was testimony here that the 2012 was unresolved. And so if it's unresolved under Article 26, that triggers the timeline. How do we know something is unresolved or carried over? Well, certainly, Your Honor, both parties are at the mediation, so they know whether we reached an agreement or we didn't. Sure, but that tells you whether you reached an agreement or not. It doesn't tell you whether it's carried over to the next one or not. Well, if you don't reach an agreement, then I think that it seems to be the practice here that it's unresolved. But doesn't unresolved could lead to arbitration, or it could lead to a second mediation, right? Well, there's really no procedure by which the second mediation happens. It seems like the evidence that we have in the record is that grievances are routinely carried over from mediation to mediation. Well, Your Honor, the paralegal maintains this list that the court looked at earlier. I don't think you can excuse any of this because you let a paralegal do this. I think you're bound by your actions just as the employee is bound by the union's actions. And so if the paralegal is not deleting grievances from the list that aren't intended to be carried over, then that's your problem, isn't it? Well, I understand your point, Your Honor, but the list is not, and there's no testimony about saying the list is, the agency's recognition that this is an ongoing or an open grievance. It's just a list issue. Let me try to come back to where we were. If they had filed here within 20 days after the second mediation, would it have been timely, yes or no? No, not under these facts because of the testimony that the parties agreed it was unresolved after the 2012. But every time it goes to a second mediation, the first one's going to be unresolved. It wouldn't ever go to the second mediation had the arbitration been triggered when it should have, though, right? And so we're in this weird position where we have the second mediation. But it wouldn't go to the second mediation if they hadn't agreed to carry it over and keep it live either. Well, there was no agreement, Your Honor, to carry it over. It just stayed on the list. Why isn't that an agreement to carry it over? I mean, you all need to do – I mean, it seems to me what's happening here is the union and the agency have operated in this very loose procedure where they don't actually pay attention to the guidelines and the timing, and they submit things, you submit things, and you just move through the process. And nobody considers these deadlines as mandatory until it gets somewhere and you get some favorable decision from a brand-new FLRA, and then you unfairly invoke it against the employee. I mean, this whole process smacks of the agency knew all along that it was going to go to arbitration on this. It took it up for mediation. Once more, it's apparent that you take up tons of cases for mediation multiple times when arbitrations are pending even. And then at this almost last minute, right before the hearing, you say, whoops, this is untimely because you should have filed three years ago, even though we've been engaging you in this process throughout since then. But if that were the case, Your Honor, and we did mediate this in 2015, and the party's argument is, well, this was a second mediation, so we should – Well, you did mediate it in 2015. It was discussed. It was a second mediation. And, well, even if that's so, let's count 2015 as the last mediation. The party still never filed a request for arbitration within 21 days following. But that's a different question that the arbitrator didn't fully respond to, which is did that premature filing ripen into a timely filing once the mediation had finished? And there's certainly past press this between you all that that's okay. And, again, as Judge Ike pointed out, that's typical under the rules of appellate procedure that a premature notice of appeal can ripen into a timely notice of appeal. I mean, why shouldn't we send this back to the arbitrator to at least look at that secondary question? Well, first, Your Honor, Ms. Bufkin didn't raise this sort of we were early, so it's okay argument below. You didn't raise the argument below that there being early is not okay. And, you know, with my colleague's permission, if it's okay, I'd like to move you to a slightly different issue. Is that all right? Okay. So I have a question. If I think, which, by the way, I do, that the deadline to request arbitration is a procedural question and not a jurisdictional one, why isn't your failure to object to their untimeliness waived? Your Honor, because we, the agency, did object with enough time for Ms. Bufkin to prepare a defense. So the case that is cited to by Ms. Bufkin is the Gunn case. And in Gunn, the agency brought up this untimeliness defense at the day of the hearing. And so the court explained that it was unfair. And the union was very surprised at this untimely defense because it had never been brought up before. Here, in this case, the agency raised this in January. The arbitration. January of what year? January of 2017, Your Honor. And when was the arbitration requested? In April.  The arbitration was requested in 2016, Your Honor. Really? I thought the arbitration was requested in 2014. Or 2014. You're right. The arbitration was requested in 2014. There's a lot of process that actually did go on between 2014 and 2018 when you finally make your belated request after receiving a panel of arbitrators and selecting an arbitrator. And then you make your request. You say, you know, I know that we actually selected the arbitrator and we walked in line with them and did all this. But now we're going to say your whole request for arbitration we now deem untimely. And you think that you can do this at that stage? Yes, Your Honor. And before an arbitrator— Here's my bigger question. You think you have a right to do it at that stage? And the reason I say that is because this particular lower court didn't conclude that the equities in his mind caused him to believe he would allow you to raise it even though it should have probably been raised earlier. What he said was, well, I don't have a choice because of precedent that binds him. But guess what? Doesn't bind me. And therefore I have to conclude Gunn doesn't apply here and I don't have a choice. So I guess what you're arguing to me is I should decide as a matter of first principles that you should equitably be entitled to raise something at the stage you did four years after the request for arbitration. A few points to that, Your Honor. First, there's no procedure by which the agency could have raised this prior to an arbitrator being selected. Why did you go ahead and select the arbitrator? Don't you think that would be an occasion to raise it? We're not going to participate in selecting the arbitrator because your request for arbitration is untimely. Your Honor, if the agency wouldn't agree to proceed with this arbitration process, it would be violating the Master Labor Agreement. No, it wouldn't. Not if you think it's untimely. Your Honor, it says – well, okay. Even if the agency didn't. If they send in a request to designate a panel, which is what starts this all off, I think, and you think it's too late, why isn't your response then, no, you missed your deadline, we're not going to agree to this? Well, because the end result of that is, under the Master Labor Agreement, the FCMS, I believe it is, or FMCS, ends up selecting the arbitrator anyway, and so then the agency would, in either situation, whether they signed it and helped select the arbitrator or whether they didn't sign it, either way, they're ending up before the arbitrator with their untimeliness issue. Yeah, but they're not on notice, so you think it's untimely. Well, Your Honor, here they were on notice way prior to the actual hearing, so there's really no reason. I think that this dialogue demonstrates that we're not the proper forum to decide whether it is equitable to allow you to raise the defense when you did in the process. So if I believe that gun controls and that the selection or the election to arbitrate is a procedural, not a jurisdictional requirement, then don't I have to vacate and remand this case? I think not, Your Honor, and because of the factual differences between this case and Gunn, again, this is not a case where the agency walked into the arbitration and said, by the way, this is untimely, and Ms. Lufkin was taken aback with no defenses like what happened in Gunn. This was not a surprise defense. But the arbitrator didn't rule on any of this stuff. The arbitrator did. I mean, let's assume we agree with you that they were untimely as to the 2012 mediation. That seems pretty clear. And if you had done nothing and not proceeded to mediate it again, you wouldn't be here. But when you relisted it, it seems to me that it keeps the whole thing alive, and it allows them a new window to request arbitration. And the arbitrator did not rule on that question, and maybe the unit didn't specifically ask him to, but that doesn't prevent us from remanding and saying, look, you really missed this important question, and given that this goes to the employee's rights to have due process and challenge the removal, look at whether the second mediation reopened the time period and whether that premature filing is sufficient and ripens into a timely appeal. I think the arbitrator looked at this just using the plain language of the MLA, and he said, under the MLA, you have 20 days following mediation. Yeah, but the problem with that is the plain language of the MLA doesn't address these facts because it doesn't contemplate a second mediation on the same grievance. And we don't know the effect of that second mediation on the grievance because there's no discussion whatsoever there. And it really feels unfair to the employee to keep stringing them along and relisting them for multiple mediations, but then come back at the end of it when those multiple mediations aren't fruitful and say, oh, well, you're out for arbitration and you can't get any judicial review of your removal because you should have filed eight years ago. Well, I think, Your Honor, that Ms. Bufkin was well aware that her first mediation was unresolved, finished, by filing for arbitration. You can't be in both mediation and arbitration at the same time. And so when Ms. Bufkin filed and requested arbitration, that's an implicit acknowledgment that mediation is over. Now we're in the next sequence of this grievance process, which is arbitration. So it's not as though she was in this world where she was unsure where she was. She's the one who affirmatively moved it to arbitration. She just did so too late. So I want to ask you a question related to this, because one of the things we are discussing is the possibility, I think, of if this went back, giving the arbitrator a chance to decide whether too early is untimely, right? That's one of the questions. This arbitrator said unequivocally with regard to the gun analysis that he was absolutely bound by decisions of the FLRA. Is that correct? Correct. And isn't it true that the FLRA has already ruled that an early arbitration is an untimely arbitration? That's correct, Your Honor. And so I think that that would really obviate any need to remand it. No, it wouldn't. What if I think that's wrong? Well, Your Honor, the arbitrator— No, it wouldn't obviate any need to remand it. I'm not bound by the FLRA. This arbitrator is bound by it, but I'm not. And then on this court's review, you would look at whether the arbitrator was arbitrary and capricious, and if he was following the choice of law— We don't write as a matter of law. I don't know that that would be inconsistent with any of this court's law, Your Honor. But you didn't hear my colleague suggest that multiple circuits have repeatedly held that early notice can be ripened into timely notice? Well, I suppose if you were to analogize that with this master labor agreement, I think that was in a different context, different language. This is a contractual agreement. Well, it's actually in a context in which the timelines are more jurisdictional, i.e. more strict than they are here. Okay, well, I think I got the answer to the question. Thank you. Thank you. Okay, thank you. Mr. Hearn? Yes, three quick points. On the arbitrator's application of FLRA law, the contract actually says that he is bound to follow MSPB law or FLSA law as provided by law, meaning simply reminding him that there's one tract or the other and only as provided by law. If you conclude that the FLRA is wrong, at least in cases that come to us, there's jurisdiction on adverse actions. Well, as provided by law, the FLRA cases do not apply to this kind of case. And that goes to the Small Business Administration case with a footnote where the FLRA actually said, well, this only applies to cases before us, acknowledging that the cases before the Federal Circuit have a different rule. So by the FLRA's own law to apply to the Small Business Administration case, you've got to apply that distinction. Is the answer to that that we are not bound by the FLRA, right? Yes, yes. On the gun case, on this issue of how long the agency waited to object to the timeliness, although in the gun case, the VA waited to the day of the arbitration. Look, stop. Even if I agree with you that gun applies here, and that's the only thing the arbitrator ruled on is that he was bound by the FLRA decision that said gun didn't apply. But if I say gun applies, I can't decide whether it's timely or untimely because there aren't clear rules on that. The arbitrator has to do that in the first instance. I can just tell him he's not bound to reject your untimeliness argument in light of gun, correct? No, I read gun as saying that you've got to object to timeliness at the first opportunity. Yes, but the government just came in and said this really was our first opportunity. Maybe it wasn't, but I'm not going to make those fact findings. I think in gun, the court, if I recall correctly, and I apologize if I don't recall correctly, but if I recall correctly, the court suggested it should have been when they were asked to sign off on selecting an arbitrator, which happened years and years and years. Sure, but these are all fact-specific, case-specific questions of equity, and this wasn't specifically addressed by the arbitrator. That's correct. We don't know if there is any other reasons. So you're asking us essentially to look on what's a very sparse record with a very confusing set of proceedings between the union and the agency and make that factual determination for the first time on it. Well, except I think the record's very clear that there was about a half a dozen or more opportunities over the course of three and a half years for the agency to object. Well, there was also half a dozen opportunities over the course of those years for you to timely file an arbitration request, too. I mean, if you were reading the agreement correctly and at the end of the 2012 period, 2012 mediation, you knew it wasn't resolved, then under the plain language of the agreement, that kicks in your obligation. You didn't meet it. So now we're in this murky world of what happens when you have a second mediation and you have ongoing back-and-forth discussions between the union and the government and requests for arbitrations. That doesn't seem to me such an easy back call on whether it's equitable or not to excuse this filing or say it's premature and therefore untimely or ripens into timeliness or anything like that. I understand that reasoning. In closing, I just want to defend however sloppy this process looks like about going to two mediations, the parties did resolve 61 cases that did not need to go to arbitration. Well, I understand. I'm not suggesting mediation's a bad thing. It just seems to me that you all should be much clearer about your intentions of what is happening after the mediation so everybody is on notice of how these timelines are going to apply. Shouldn't that order listing the grievance as resolved say also and give notice to the union and the underlying employees that if your grievance wasn't resolved through mediation, then we consider it closed and you have a right to seek arbitration? Why don't you insist that that language be put into the document? Well, I think those are all very good recommendations. Your Honor. Okay, with that. Thank you. Thank both counsel. The case is submitted. That concludes our session for this morning. All rise.